IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| REDi ENTERPRISE DEVELOPMENT INC., | ] |
| Plaintiff, | ] |
| v. | ]   2:25-cv-520-ACA |
| QRAILS, INC., | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

Plaintiff REDi Enterprise Development, Inc. entered into an agreement with Defendant QRails, Inc. to provide software and technological services to QRails. For these services, QRails agreed to pay REDi $2,750 per month. But if QRails failed to convert to the processing services, QRails owed 70 percent of the total. QRails failed to pay its invoices and to convert to REDi's processing services. This lawsuit followed. REDi brings claims for breach of contract ("Count One") and unjust enrichment ("Count Two"). (Doc. 1). After QRails waived service (*see* doc. 7; doc. 10), it failed to appear, so the Clerk entered default against it. REDi now moves for default judgment. (Doc. 25). The court **WILL GRANT IN PART** and **DENY IN PART** REDi's motion and **WILL ENTER DEFAULT JUDGMENT** against QRails. The court **WILL DISMISS WITH PREJUDICE** REDi's claim for unjust enrichment.

I.  **BACKGROUND**

A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quotation marks omitted). Accordingly, the court takes as true the well-pleaded allegations of REDi's complaint. REDi also attached the parties' agreement to the complaint, which is considered a part of the pleading. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Just.*, 758 F.2d 1426, 1430 (11th Cir. 1985).

In July 2022, REDi entered into a "Master Software License, Maintenance, and Services Agreement" with QRails. (Doc. 1 ¶ 6). The agreement required REDi to provide its "Verify Fraud & Notification Platform software and related processing services to QRails." (*Id.*). In exchange for the processing services, QRails agreed to pay REDi $2,750 per month. (*Id.* ¶ 9). REDi billed QRails monthly beginning in November 2022, with each invoice due on receipt. (*Id.* ¶¶ 9, 11). But QRails struggled to pay REDi's invoices. (Doc. 1 ¶ 12). QRails also failed to "convert to any of the processing services." (*Id.* ¶¶ 13, 15–16, 29). Nevertheless, to continue the partnership, REDi waived all fees and late charges that accrued from November 2022 through September 1, 2023. (*Id.* ¶ 14).

Even after REDi waived QRails's balance, QRails still failed to pay REDi's invoices starting in September 2023. (*Id.* ¶ 16). In total, it has not paid REDi for nineteen invoices from September 2023 to April 2025 "for services performed by

2

REDi in accordance with the Agreement."[1] (Doc. 1 ¶ 16). Nor has QRails converted to REDi's processing services. (*Id.* ¶ 29). For unpaid balances, the agreement provided an interest rate of the lesser of 1.5 percent per month "or the maximum amount permitted by applicable law," until the amount is paid in full. (*Id.* ¶ 10). The agreement also provides for "all attorney fees and expenses actually incurred by REDi in collecting any past due fees, payments or reimbursements of any kind." (Doc. 1-1 at 6).

## II.  DISCUSSION

Federal Rule of Civil Procedure 55 establishes a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the Clerk of Court must enter the party's default. Fed. R. Civ. P. 55(a). Second, if the defendant is not an infant or an incompetent person, the court may enter a default judgment against the defendant as long as the well-pleaded allegations in the complaint state a claim for relief. Fed. R. Civ. P. 55(b); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] The Clerk entered QRails's default. (Doc. 16). Accordingly, the court turns to REDi's motion for default judgment.

---

[1] The complaint alleges that QRails failed to pay for services from September 2023 "to the present." (Doc. 1 ¶ 16). REDi filed its complaint on April 8, 2025.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

3

1. Count One

Count One alleges that QRails breached the Master Software License, Maintenance, and Services Agreement. (Doc. 1 ¶¶ 25–30). To state a claim for breach of contract under Alabama law, the plaintiff must show "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020). REDi's well-pleaded factual allegations satisfy all four elements: REDi and QRails entered into the Master Software License, Maintenance, and Services Agreement (doc. 1 ¶¶ 6–10), REDi supplied the services that it promised under the agreement (*see id.* ¶¶ 11–20); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015), QRails failed to pay REDi (*see* doc. 1 ¶¶ 16–24, 30; doc. 1-1 at 22–36), thus REDi suffered damages (doc. 1 ¶¶ 22, 30). Accordingly, REDi's complaint states a claim for breach of contract under Alabama law.

Next, the court must determine REDi's damages. *See Anheuser-Busch, Inc. v. Philpot*, 317 F. 3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters."). In its motion for default judgment, REDi seeks the balance of the twenty-six unpaid invoices from September 2023 to November 2025, contractual interest on the unpaid invoices, and attorney's fees and costs. (Doc. 25 at 4–5). Because REDi requested each form of

4

relief in its complaint, (*see* doc. 1 at 5); Fed. R. Civ. P. 54(c), the court will address each in turn.

First, REDi has sufficiently shown its damages for the nineteen—not twenty-six—unpaid invoices. Although REDi submits an affidavit from its CEO, Rodney Fuller, Jr., that outlines QRails failed to pay twenty-six invoices from September 2023 to November 2025, the court is limited to the well-pleaded allegations in REDi's complaint. *Surtain*, 789 F.3d at 1245. In its complaint, REDi alleges QRails failed to pay invoices from September 2023 "to the present" and that each invoice billed the agreed-upon $2,750 per month for services that REDi provided under the agreement. (Doc. 25-1 ¶¶ 7, 9, 12–14, 16). REDi filed its complaint on April 8, 2025. Accordingly, the court is limited to the allegations until April 2025. Thus, QRails has failed to pay nineteen invoices due under the agreement.

Second, under the terms of the agreement, REDi is entitled to $1,925 per invoice—not $2,750. The agreement states that "If after executing a Processing Services Schedule[,] Customer fails to convert to any of the Process Services shown in the Schedule for any reason . . . then Customer shall be liable to REDI for an amount equal to 70% of the fees detailed in the Processing Services Schedule . . . ." (Doc. 1-1 at 10). The Processing Services Schedule indicates that the minimum fee is $2,750. (*Id.* at 15). At the same time, REDi alleges that QRails failed to "convert any of the processing services provided by REDi." (Doc. 1 ¶¶ 13, 15–16, 29).

5

Accordingly, REDi is entitled to $1,925 per invoice—70 percent of the $2,750 minimum.

Third, although REDi has established it is entitled to contractual interest, it overcalculates the applicable interest rate. QRails agreed to pay the lesser of 18% annually or "the maximum amount permitted by applicable law" in interest for any late payments. (Doc. 1-1 at 6). Alabama law caps interest at 8% per year on damages for breach of a written contract.[3] *See* Ala. Code § 8-8-1 ("[T]he rate of interest by written contract is not to exceed $8 upon $100 for one year and at that rate for a greater or less sum or for a longer or shorter time."); *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 429 (Ala. 2006). Thus, REDi is entitled to 8% per year in interest—not 18%.

Using these principles and REDi's allegations, the court finds that REDi has proven $40,646.51 in damages. REDi seeks only the interest that has accrued as of October 31, 2025. (Doc. 25-1 at 5 ¶ 15). The court outlines its calculation in the table below:

---

[3] REDi alleges that Alabama law governs the contract. (Doc. 1 at 1 n.1; doc. 1-1 at 9).

| Invoice Date | Due Date | Principal | Aging as of October 31, 2025 (in days) | Daily Rate (8% annually) | Accured Interest as of October 31, 2025 |
|---|---|---|---|---|---|
| 9/10/2023 | 9/10/2023 | $1,925 | 782 | 0.02% | $329.94 |
| 10/10/2023 | 10/10/2023 | $1,925 | 752 | 0.02% | $317.28 |
| 11/10/2023 | 11/10/2023 | $1,925 | 721 | 0.02% | $304.20 |
| 12/10/2023 | 12/10/2023 | $1,925 | 691 | 0.02% | $291.55 |
| 1/10/2024 | 1/10/2024 | $1,925 | 660 | 0.02% | $278.47 |
| 2/10/2024 | 2/10/2024 | $1,925 | 629 | 0.02% | $265.39 |
| 3/10/2024 | 3/10/2024 | $1,925 | 600 | 0.02% | $253.15 |
| 4/10/2024 | 4/10/2024 | $1,925 | 569 | 0.02% | $240.07 |
| 5/10/2024 | 5/10/2024 | $1,925 | 539 | 0.02% | $227.41 |
| 6/10/2024 | 6/10/2024 | $1,925 | 508 | 0.02% | $214.33 |
| 7/10/2024 | 7/10/2024 | $1,925 | 478 | 0.02% | $201.68 |
| 8/10/2024 | 8/10/2024 | $1,925 | 447 | 0.02% | $188.60 |
| 9/10/2024 | 9/10/2024 | $1,925 | 416 | 0.02% | $175.52 |
| 10/10/2024 | 10/10/2024 | $1,925 | 386 | 0.02% | $162.86 |
| 11/10/2024 | 11/10/2024 | $1,925 | 355 | 0.02% | $149.78 |
| 12/10/2024 | 12/10/2024 | $1,925 | 325 | 0.02% | $137.12 |
| 1/10/2025 | 1/10/2025 | $1,925 | 294 | 0.02% | $124.04 |
| 2/10/2025 | 2/10/2025 | $1,925 | 263 | 0.02% | $110.96 |
| 3/10/2025 | 3/10/2025 | $1,925 | 235 | 0.02% | $99.15 |

|  |  |
|---|---|
| Total interest: | $4,071.51 |
| Total Principal: | $36,575 |
| Total Damages: | $40,646.51 |

Accordingly, the court **WILL AWARD** $40,646.51 in damages (comprised of the principal of $1,925 per invoice and the interest accrued as of October 31, 2025) and **WILL DENY** REDi's request for damages in excess of that amount.

Fourth, REDi argues that it is entitled to recover attorney's fees under the agreement, which provides that QRails must pay "all attorney fees and expenses actually incurred by REDi in collecting any past due fees, payments or

7

reimbursements of any kind." (Doc. 1-1 at 6). Although the contract provides for all "actually incurred" attorney's fees, Alabama law imposes a reasonableness requirement. *See Twickenham Station, Inc. v. Beddingfield*, 404 So. 2d 43, 46–47 (Ala. 1981); *Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So. 3d 226, 241–42 (Ala. Civ. App. 2010). In total, REDi seeks $23,384 in attorney's fees and $405 for the court's filing fee. (Doc 25 ¶ 26).

In support of its request, REDi submitted multiple affidavits. James Williams, one of REDi's attorneys, submitted an affidavit that outlines each attorney or legal assistant who worked on the case, how long each person worked, each person's hourly rate, and how long each attorney has practiced law. (Doc. 25-2 ¶ 5). Attorneys' rates ranged from $350–520 per hour, and rates for work performed by legal assistants ranged from $175–240 per hour. (*Id.*). In total, attorneys and legal assistants worked 51.74 hours on the matter, and REDi received a $55 discount. (*Id.*). Mr. Williams notes the work flowed from REDi's attempts to settle the matter, negotiating with QRails, and the ongoing litigation. (*Id.* ¶ 4). And he attests that the attorneys and legal assistants followed ordinary billing practices. (Doc. 25-2 ¶ 8).

The court finds the requested amount reasonable. Mr. Williams outlined each attorney or legal assistant that worked on the matter, how many hours that each individual worked, the billing rates, and the scope of work performed. (Doc. 25-2 ¶ 5). In the court's experience, the attorneys' hourly rates were in line with the rates

charges by similar law firms rendering similar services. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). REDi has also filed multiple motions and responded to orders to show cause. Accordingly, the court finds REDi's request of $23,384 in attorney's fees reasonable and **WILL AWARD** that amount in addition to the court's $405 filing fee. *See* 28 U.S.C. § 1920(1).

    2. <u>Count Two</u>

Count Two asserts a claim for unjust enrichment. (Doc. 1 ¶¶ 31–36). But REDi does not move for default judgment on that claim (*see generally* doc. 25), and REDi has indicated an intent not to prosecute the claim (*see* doc. 27; doc. 29). Because REDi is entitled to default judgment on breach of contract claim, it cannot recover on its claim for unjust enrichment. *See Blackmon v. Renasant Bank*, 232 So. 3d 224, 228 n.4 (Ala. 2017). Accordingly, the court **WILL DISMISS** Count Two.

### III. CONCLUSION

For the reasons stated above, the court **WILL GRANT IN PART** and **DENY IN PART** REDi's motion. (Doc. 25). The court **WILL GRANT** the motion with respect to QRails's breach of contract and **WILL ENTER DEFAULT JUDGMENT** against QRails for Count One. The court **WILL AWARD** $40,646.51 in damages for unpaid invoices and interest, $23,384 in attorney's fees, and the court's $405 filing fee. The court **WILL DENY** REDi's motion to the extent it seeks damages in excess of the amount that the court calculated.

The court **WILL DISMISS WITH PREJUDICE** Count Two for unjust enrichment.

**DONE** and **ORDERED** this March 13, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE